CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Rebecca Abel (Bar No. 298604)
(Email: Rebecca_Abel@fd.org)
Aden Kahssai (NV Bar No. 15581)
(E Mail: Aden_Kahssai@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Alexandria Augustine

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

Alexandria Augustine.

Defendant.

Case No. 2:25-cr-00678-KS

**MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION, OR IN THE ALTERNATIVE FOR DISCOVERY AND AN EVIDENTIARY HEARING; EXHIBITS**

Trial Date: February 26, 2026
Location: Courtroom of the Hon. Karen L. Stevenson

Alexandria Augustine, by and through her counsel of record, Deputy Federal Public Defenders Rebecca Abel and Aden Kahssai, hereby moves this Honorable Court for an order dismissing the indictment for selective and vindictive prosecution. In the alternative, the defense requests discovery on its selective prosecution claim and an evidentiary hearing on its vindictive prosecution claim.

This motion is based on the attached Memorandum of Points and Authorities, declaration of counsel, exhibits, and all files and records in this case.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 19, 2026

By *(/s/ Rebecca M. Abel)*

REBECCA ABEL
ADEN KAHSSAI
Deputy Federal Public Defender
Attorneys for ALEXANDRIA AUGUSTINE

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. Protests against immigration enforcement at Rybal Federal Building and United States Courthouse. ........ 2

B. Attorney General Pam Bondi and First Assistant United States Attorney Bilal Essayli announced that anyone who touches a law enforcement officer will be prosecuted. ........ 3

C. The government filed a criminal complaint charging Ms. Augustine with assault on a federal officer. ........ 4

D. The government brought additional charges against Ms. Augustine. ........ 5

E. Video evidence shows multiple people crossing onto federal property that night, but only Ms. Augustine was arrested and prosecuted. ........ 6

F. Inspector Guiterrez admitted he had his focus on Ms. Augustine the night of the incident. ........ 7

III. ARGUMENT ........ 7

A. The government engaged in selective prosecution of Ms. Augustine. ........ 7

1. There is evidence of discriminatory intent. ........ 8

2. There is evidence of discriminatory effect. ........ 10

B. The government engaged in vindictive prosecution. ........ 12

1. The circumstances and timing of the government's decision to charge Ms. Augustine with the Class C offense raises the appearance of vindictiveness. ........ 14

2. The government cannot rebut the presumption of vindictiveness... 16

IV. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adamson v. Ricketts*,
865 F.2d 1011 (9th Cir. 1988) (en banc) .......... *passim*

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 8

*Blackledge v. Perry*,
417 U.S. 21 (1974) .......... 12

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) .......... 12

*United States v. Brown*,
9 F.3d 1374 (8th Cir. 1993) .......... 8

*United States v. Falk*,
479 F.2d 616 (7th Cir. 1973) (en banc) .......... 9

*United States v. Garza-Juarez*,
992 F.2d 896 (9th Cir. 1993) .......... 1, 13, 14

*United States v. Goodwin*,
457 U.S. 368 (1982) .......... 12, 13, 16

*United States v. Groves*,
571 F.2d 450 (9th Cir. 1978) .......... 13

*Hartman v. Moore*,
547 U.S. 250 (2006) .......... 8

*United States v. Jenkins*,
504 F.3d 694 (9th Cir. 2007) .......... 12, 13, 16

*United States v. Lee*,
786 F.2d 951 (9th Cir. 1986) .......... 8

*United States v. Ruesga-Martinez*,
534 F.2d 1367 (9th Cir. 1976) .......... 13, 16

*United States v. Steele*,
461 F.2d 1148 (9th Cir. 1972) .......... 1, 8, 10, 11

**TABLE OF AUTHORITIES**

Page(s)

*Wayte v. United States*,
470 U.S. 598 (1985) .......... 7, 8, 9

*United States v. Wilson*,
123 F.4th 1021 (9th Cir. 2024) .......... 1, 8, 10

**Federal Statutes**

8 U.S.C. § 1325 .......... 16

8 U.S.C. § 1326 .......... 16

18 U.S.C. § 111 .......... 4

18 U.S.C. § 111(a)(1) .......... 5, 6

**Regulations**

41 CFR § 102-74.385 .......... 2, 5, 6

41 CFR § 102-74.390(c) .......... 2, 5

**Other Authorities**

Attorney General Pamela Bondi, X,
https://x.com/agpambondi/status/1956010229348413694?s=46 .......... 3

First Assistant United States Attorney Bill Essayli, X,
https://x.com/usattyessayli/status/1982142755980861487?s=46 .......... 4

First Assistant United States Attorney Bill Essayli, X,
https://x.com/usattyessayli/status/1948865784916443293?s=46 .......... 3

Ingraham Angle, *California Prosecutor Breaks Down 'Serious Charges' Against Violent Activists*, Fox News (Oct. 24, 2025) .......... 4

Inside California Politics, X,
https://x.com/californiaicp/status/1938703893019394453?s=46 .......... 3

Pamela Bondi, Memorandum on Ending Political Violence Against ICE (Sep. 29, 2025),
https://www.justice.gov/ag/media/1415691/dl?utm_medium=email&utm_source=govdelivery .......... 3

# TABLE OF AUTHORITIES

Page(s)

Sergio Martínez-Beltrán, *Immigration enforcement ramps up, tensions persist in big cities,* NPR (June 11, 2025), https://www.npr.org/2025/06/11/nx-s1-5430914/immigration-enforcement-ramps-up-tensions-persist-in-big-cities-trump-california ............... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The prosecution of Ms. Alexandria Augustine for this Class C misdemeanor is an unlawful act of selective and vindictive prosecution.

As to selective prosecution, Ms. Augustine "is entitled to an acquittal" because the "evidence prove[s] that the authorities purposefully discriminated against those who chose to exercise their First Amendment rights." *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972). The evidence shows that among those who were allegedly on federal property that evening, only Ms. Augustine was targeted with a violation of this statute. She was targeted by Inspector Alexandro Gutierrez because of her speech and her role as a leader among the protestors. That targeting is evidenced by Inspector Gutierrez' plain statement "You're next" to Ms. Augustine after she used her voice to challenge the Inspector. Such targeting amounts to selective prosecution for which dismissal is warranted. In the alternative, Ms. Augustine requests discovery on this claim because she has shown at a minimum "some evidence" of discrimination. *United States v. Wilson*, 123 F.4th 1021, 1028 (9th Cir. 2024).

As to vindictive prosecution, for decades, courts have held that a person facing criminal charges must be free to exercise constitutional, statutory, or procedural rights without apprehension of prosecutorial vindictiveness. When the government "file[s] increased charges directly follow[ing] the assertion of a procedural right," and those charges "are based on the same conduct" as the original charges, there is at least the "appearance of vindictiveness." *United States v. Garza-Juarez*, 992 F.2d 896, 907 (9th Cir. 1993). Those circumstances trigger a "presumption of vindictiveness," and courts shift the burden to the government to "dispel the appearance of vindictiveness." *Id.* at 906 (quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)).

The superseding information here was (at least) apparently vindictive, and the government should be called to answer for it. The day before Ms. Augustine exercised her right to a jury trial, the government filed a Second Superseding Information

charging Ms. Augustine with a Class C misdemeanor, which has no right to a jury trial, for failing to comply with lawful directions to get off federal property.[1] Dkt. No. 67. The filing of an additional charge on the eve of Ms. Augustine's exercise of her right to a jury trial—with an offense that has no right to a jury trial and for which the government refused to try to the jury—was vindictive. The government punished Ms. Augustine for going to trial by adding a charge against her—despite the fact that both charges rely on the same conduct that had been the subject of the case from its inception. Accordingly, the burden shifts to the government to rebut the presumption of vindictiveness by producing objective evidence justifying its conduct, which all available information suggests it cannot do.

For the reasons explained below, the Court should dismiss the remaining count of the Second Superseding Information.

## II. STATEMENT OF FACTS

### A. Protests against immigration enforcement at Rybal Federal Building and United States Courthouse.

In early June 2025, a large wave of protests against federal immigration enforcement operations occurred in Los Angeles. These protests mobilized thousands of people, the vast majority of them peacefully protesting. *See* Sergio Martínez-Beltrán, *Immigration enforcement ramps up, tensions persist in big cities*, NPR (June 11, 2025), https://www.npr.org/2025/06/11/nx-s1-5430914/immigration-enforcement-ramps-up-tensions-persist-in-big-cities-trump-california. Protestors arrived with signs and megaphones, to criticize immigration enforcement, and cell phones, to broadcast the

[1] Initially, seven days before the jury trial, the government added two Class C misdemeanors for: Count Two, a violation of 41 CFR § 102-74.390(c) for "imped[ing] or disrupt[ing] the performance of official duties by Government employees," and Count Three, a violation of 41 CFR § 102-74.385 for failing to comply with official signs and lawful direction of a federal officer. Dkt. No. 65. After the defense moved to dismiss on duplicity and multiplicity grounds (Dkt. No. 32), the government dismissed Count Two and issued a Second Superseding Information proceeding only on the violation of 41 CFR § 102-74.385. Dkt. No. 67. The government opposed the defense's motion to have the Class C offense resolved by the jury in a single trial. Dkt. No. 50.

protests to the world. As the evidence at trial demonstrated, one of the main protest locations in Los Angeles is the Roybal Federal Building and United States Courthouse ("Roybal"). Protestors gathered at Roybal every day for months over the summer to protest federal immigration enforcement.

### B. Attorney General Pam Bondi and First Assistant United States Attorney Bilal Essayli announced their intent to prosecute "leaders" of protest movements.

As early as June 2025 and continuing into the fall, First United States Attorney Bilal Essayli announced on social media an aggressive charging strategy. On June 27, 2025, Mr. Essayli reposted a video to X, stating, "anyone who touches an agent or gets in the way of an operation, you will be arrested…you will be charged with a crime…it's a felony." Inside California Politics, X, https://x.com/californiaicp/status/1938703893019394453?s=46. Mr. Essayli continued to stand by this strategy, posting on X, "I can't be anymore [sic] clear. If anyone touches our agents or gets in our way, you will be arrested and charged with a federal crime." First Assistant United States Attorney Bill Essayli, X, https://x.com/usattyessayli/status/1948865784916443293?s=46.

United States Attorney General Pam Bondi also espoused a broad strategy in charging those who touch federal officers. Ms. Bondi posted on X, "If you touch any law enforcement officer, we will come after you." Attorney General Pamela Bondi, X, https://x.com/agpambondi/status/1956010229348413694?s=46. Mr. Essayli reposted that statement on X. Ms. Bondi also issued a memo on September 29, 2025, where she stated, "Our officers will suppress all unlawful rioting and arrest every person suspected of threatening or assaulting a federal law enforcement officer or interfering with federal law enforcement operations." Pamela Bondi, Memorandum on Ending Political Violence Against ICE (Sep. 29, 2025), https://www.justice.gov/ag/media/1415691/dl?utm_medium=email&utm_source=govdelivery.

When Fox News analyst Laura Ingraham stated that there wasn't concern about prosecution among "violent activists," he responded, "Things have quieted down a lot [in Los Angeles]…We've charged about 100 individuals, mostly the leaders of these activists…They are [] very loud and very organized, we have to dismantle them." Ingraham Angle, C*alifornia Prosecutor Breaks Down 'Serious Charges' Against Violent Activists*, Fox News (Oct. 24, 2025), https://www.foxnews.com/video/6383846657112; First Assistant United States Attorney Bill Essayli, X, https://x.com/usattyessayli/status/1982142755980861487?s=46.

**C. The government filed a criminal complaint charging Ms. Augustine with assault on a federal officer.**

On July 25, 2025, the government filed a criminal felony complaint against Ms. Augustine, charging a violation of 18 U.S.C. § 111, assault on a federal officer. Dkt. No. 1. The complaint alleged that a "group of people made their way from the public sidewalk that abuts Alameda Street onto the federal property that sits between the Roybal parking garage entrance and the sidewalk." *Id.* at 4. "Since [the] group of people were trespassing on federal property…FPS officers (including Officer Alexandro Guiterrez.) were deployed to try to move the crowd back toward Alameda Street." *Id)* "As the FPS officers moved the protestors back, Officer Guiterrez approached Augustine and Augustine extended her umbrella toward Officer A.G…[he] tore the fabric off the umbrella's frame." *Id*. Finally, the complaint alleged Augustine threw, and intentionally assaulted Officer A.G. *Id*.

The FPS officers arrested Ms. Augustine at the scene for the alleged assault. She was not arrested for failing to comply with the officers' directives. None of the other people among the group of protestors present that evening were arrested for failing to comply with the officers' lawful directives. Ms. Augustine made her initial appearance on the complaint on July 28, 2025. Dkt. No. 6.

**D. The government brought additional charges against Ms. Augustine.**

On August 15, 2025, the government moved to dismiss the felony complaint, and the magistrate court did so on August 18, 2025. Dkt. Nos. 15, 16. Also on August 15, 2025, the government filed an information, charging Ms. Augustine with assault of a federal officer under 18 U.S.C. § 111(a)(1), a Class A misdemeanor, based on the same conduct alleged in the complaint. Dkt. No. 17. On August 22, 2025, Ms. Augustine appeared for an arraignment on the misdemeanor information. Dkt. No. 20. The case was assigned to this District Court Judge John F. Walter and jury trial was set for October 7, 2025. *Id.*

On September 8, 2025, Ms. Augustine filed a consent to proceed before a magistrate judge (M-71). Dkt. No. 22. On September 22, 2025, after a status conference, the case was transferred and assigned to Chief Magistrate Judge Karen L. Stevenson. The Court further set a jury trial for October 7, 2025. Dkt. No. 28. During this time, the government extended a plea offer to Ms. Augustine but she elected to exercise her right to go to trial.

On September 29, 2025, seven days before trial, the government added two charges to this case in a Superseding Information: Count Two, violation of 41 C.F.R. § 102-74.390(c): causing a disturbance by impeding or disrupting the performance of official duties by government employees and Count Three, a violation of 41 C.F.R. § 102-74.385: failing to comply with official signs and directions. Dkt. No. 65.

On October 1, 2025, Ms. Augustine moved to dismiss Counts Two and Three, based multiplicity and duplicity. Dkt. No. 32. On October 2, 2025, the government opposed. Dkt. No. 47. On October 3, 2025, the government informed the Court that it would voluntarily dismiss Count Two. Dkt No. 53 at 1. On October 6, 2025, the government filed a Second Superseding Information charging Count One, Assault on a Federal Officer in violation of 18 U.S.C. § 111(a)(1), a Class A Misdemeanor; and Count Two, Failing to Comply with Official Signs and Directions in violation of 41 C.F.R. § 102-74.385, a Class C Misdemeanor. Dkt. No. 67.

The government's additional charge against Ms. Augustine from one Class A misdemeanor to an additional count of a Class C misdemeanor increased the penalties Ms. Augustine faced. Under the Class A misdemeanor in violation of 18 U.S.C. § 111(a)(1), Ms. Augustine faced a maximum sentence of 12 months' imprisonment, a fine of up to $100,000, and up to 5 years of probation. With the additional Class C misdemeanor in violation of 41 C.F.R. § 102-74.385, Ms. Augustine faced an additional maximum penalty of 30 days, a fine of up to $5,000, and up to 1 year of probation. The Class C count also limited Ms. Augustine's right to have jury trial on all counts. Notably, the Second Superseding Information contained no facts or allegations beyond those in the complaint the government filed three months earlier.

The defense moved to have both counts tried jointly to the jury. Dkt. No. 34. Despite the government conceding that almost all of the evidence for the Class A and C offenses was identical, the government opposed trying both counts to the jury. Dkt. No. 50.

The day after the filing of the Second Superseding Information, the Court held a jury trial on Count One. Dkt. No. 73. After a four day jury trial, Ms. Augustine was acquitted of the assault charge. Dkt. No. 85.

The Class C misdemeanor charge is set for a bench trial on February 26, 2026. Dkt. No. 92.

**E. Video evidence shows multiple people crossing onto federal property that night, but only Ms. Augustine was arrested and prosecuted.**

According to FPS Officers' testimony at trial, there were approximately 50 to 75 demonstrators that night on either side of Alameda St. coming on and off federal property. Ex. A. According to their testimony, the demonstrators were repeatedly warned not to come onto federal property. *Id.* As the video exhibits admitted at trial show, there were several people present that night who were physically on the apron, which the government contends is federal property. Ex. 145 at 00:05-00:31.




Only Alexandria Augustine was arrested that evening. Only Alexandria Augustine has been charged with failing to comply with the officers' direction not to come onto federal property.

**F. Inspector Guiterrez admitted he had his focus on Ms. Augustine the night of the incident.**

At trial, the video evidence showed that 40 minutes before her arrest, Ms. Augustine was standing among dozens of other protestors. Ex. 146. She had a megaphone and was using her voice to criticize the actions of the FPS officers present that evening. *Id.* at 00:00-00:28. Inspector Gutierrez looked directly at Ms. Augustine, walked over to where she was standing, smirked at her, pointed at her, and said "You're next." *Id.* at 00:28-00:50. Forty minutes later Inspector Gutierrez arrested Ms. Augustine, and only Ms. Augustine, claiming she assaulted him.

## III. ARGUMENT

**A. The government engaged in selective prosecution of Ms. Augustine.**

Prosecutorial discretion is broad, but it is not "'unfettered.' Selectivity in the prosecution of criminal laws is . . . subject to constitutional constraints." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (citation omitted). "[T]he decision to prosecute may not

be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,'" *id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)), including the exercise of protected statutory and constitutional rights, *see Hartman v. Moore*, 547 U.S. 250, 256 (2006). "A defendant cannot be convicted if he proves unconstitutional discrimination in the administration of a penal statute." *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (citing *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 588 (1961)).

Selective prosecution claims are analyzed according to ordinary equal protection standards. *Armstrong,* 517 U.S. at 465; *Wayte*, 470 U.S. at 608. "To establish impermissible selective prosecution, a defendant must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive." *United States v. Lee*, 786 F.2d 951, 957 (9th Cir. 1986) (citing *Wayte,* 470 at 608). "Discriminatory purpose 'implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *United States v. Brown*, 9 F.3d 1374, 1376 (8th Cir. 1993) (quoting *Wayte,* 470 U.S. at 610).

To warrant dismissal, the defense must demonstrate "clear evidence, first that the decision to prosecute had a discriminatory effect and, second, that it was motivated by a discriminatory purpose." *United States v. Wilson*, 123 F.4th 1021, 1027 (9th Cir. 2024) (internal quotation and alteration omitted). To warrant discovery on the claim, the defense must show "some evidence" of discriminatory effect and intent. *Id.*

Based on the evidence at trial, Ms. Augustine has adduced clear evidence of discriminatory intent and effect, warranting dismissal. At a minimum, the testimony and exhibits provide some evidence, necessitating that the government produce discovery on the claim.

**1. There is evidence of discriminatory intent.**

The evidence adduced at trial demonstrates an intent to target Ms. Augustine for her speech. The government is prohibited from punishing individuals more harshly

simply for being "a member of a group unpopular with the government." *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) (en banc); *see id.* (remanding for hearing on selective prosecution for allegedly targeting defendant as a member of Chicago Area Draft Resisters). Here, First Assistant United States Attorney Bilal Essayli went on Fox News and stated that their charging priorities were those who were "leaders" of the activists. The circumstances show what Mr. Essayli meant by leaders; he meant people who are often present at the protests, and asserting their right to freedom of speech.

Officer Guiterrez identified Ms. Augustine as both of those things, testifying that she was memorable due to her constant physical presence at Roybal and her use of a megaphone. Physical presence is a demonstration of conduct protected by the First Amendment. Prosecution for repeated exercising of a constitutional right is a violation of equal protection. *See Wayte*, 470 U,S. at 608.

The dismissed complaint in this case alleged that a group of people made their way from the public sidewalk that abuts Alameda Street *onto the federal property* that sits between the Roybal parking garage entrance and the sidewalk. It alleged that same group of people were *trespassing on federal property* and were carrying items that could have been used to obstruct vehicle traffic between Alameda Street and the Roybal parking garage. Yet, none of these people were arrested or prosecuted except Ms. Augustine.

Officer Guiterrez' own statement "You're next" is clear evidence of his intent to discriminate against Ms. Augustine for her speech. At the time he made the threat, Ms. Augustine was using her megaphone on public, non-federal property. She was taunting the officers, calling them "pathetic," asking if the light was too bright, asking how it felt to have "a taste of their own medicine." It was her speech that prompted Officer Gutierrez to approach her, look her in the eye, smirk and threaten her, "You're next." Just 40 minutes later, he arrested her.

The lack of evidence against Ms. Augustine, proven by a full acquittal of the assault charge, is also a strong reason that there is discriminatory intent here. The evidence at trial showed Ms. Augustine did not have the intent to throw an umbrella at

Officer Guiterrez and if she did, she acted in self-defense. The video shows Officer Guiterrez selected Ms. Augustine for prosecution when he approached her out of the entire group of people on and near the apron. And her umbrella did not make her stand out, as there were other umbrellas open and in use at the same time.

"An enforcement procedure that focuses upon the vocal offender is inherently suspect, since it is vulnerable to the charge that those chosen for prosecution are being punished for their expression of ideas." *Steele*, 461 F.2d at 1152. The evidence adduced at trial is more than enough to demonstrate discriminatory intent to warrant dismissal, or at a minimum, to obtain discovery.

**2. There is evidence of discriminatory effect.**

There is clear evidence that similarly situated people were not prosecuted for the same conduct. "To show discriminatory effect sufficient to warrant discovery, a defendant must 'produce some evidence that similarly situated defendants . . . could have been prosecuted, but were not.'" *Wilson*, 123 F.4th at 1027 (alteration in original) (quoting *United States v. Armstrong*, 517 U.S. 456, 469 (1996)).

The control group here is other people present at the protest near the loading dock at Roybal on the same night who had been told to stay off federal property and failed to obey those commands by trespassing onto federal property. The videos introduced at trial identify at minimum five other people who fall into that category. Exs. 145, 147. They were all standing inches away from Ms. Augustine at the time she allegedly violated the officers' lawful directive. The officers claimed they had told tht entire group not to come onto the property, and they were disobeying. Ex. A. Two of them—Octavio Solario and Alissa Guzman—testified at trial. The government even believed they had violated the same ordinance, going so far as to demand that the witnesses be given an opportunity to consult with counsel regarding their potential criminal exposure. At trial, government counsel stated:

> In the openings yesterday, defense counsel proffered that they would be presenting evidence of other witnesses who were on the scene during this incident. The government does not have information about where these individuals were. To the extent

> they were on federal property or perhaps otherwise involved with interfering with the arrest of Ms. Augustine, there may be criminal exposure. Our Ethics Council has advised us that before they take the stand and testify under oath and before we cross-examine them about these incidents, that they should be advised of their Fifth Amendment rights.

As a result of the government's demand, both witnesses consulted with counsel. Both witnesses insisted on testifying despite what the defense attorney and the witness' attorneys jointly characterized as threats of prosecution in order to intimidate them. The testimony of both witnesses confirmed that they were identically situated to Ms. Augustine. Nonetheless, neither of them have ever been prosecuted for this Class C offense. Nor have any of the other three persons present on the apron that evening.

Only Ms. Augustine was prosecuted for failing to comply with a lawful direction. The one the officers knew was the leader of the group. The one who had been to the Roybal building repeatedly that summer. The one with the megaphone. The one who verbally teased Officer Gutierrez. The only one who used her voice in protest. The one who was targeted by Officer Gutierrez' threat: "you're next."

The facts in *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972), offer a useful comparison. In *Steele*, the defendant was prosecuted for refusing to participate in the U.S. census in Hawaii. *Id.* at 1151. Although there were at least six other Hawaiians who refused to participate in the census whom the government was aware of, only the defendant and three others were prosecuted. *Id.* The evidence showed that the four who were prosecuted were identified by census-takers as "hard core protesters" attempting to incite others to subvert the law. The Ninth Circuit found that the defendant had established that the prosecution was a result of invidious discrimination targeting him because of his First Amendment protected speech. The Court reversed the conviction, explaining that "[t]he government offered no explanation for its selection of defendants, other than prosecutorial discretion. That answer simply will not suffice in the circumstances of this case. Since Steele had presented evidence which created a strong

inference of discriminatory prosecution, the government was required to explain it away . . . by showing the selection process actually rested upon some valid ground." *Id.*

Here, it is Ms. Augustine who is identified as a hard core protestor, someone who repeatedly is at the front of protests with a megaphone. She is the one who is prosecuted over at least five others who were there that night, engaging in conduct that the United States Attorney's Office said should be subject to prosecution.

The evidence adduced at trial is more than enough to demonstrate discriminatory effect to warrant dismissal, or at a minimum, to obtain discovery on the selective prosecution claim.

**B. The government engaged in vindictive prosecution.**

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). The Supreme Court has recognized that it is "patently unconstitutional" "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights." *Bordenkircher*, 434 U.S. at 363 (internal citation and quotation marks omitted). Accordingly, "a prosecutor cannot increase the charges against a defendant in retaliation for the defendant's assertion of a statutory right." *Adamson v. Ricketts*, 865 F.2d 1011, 1017 (9th Cir. 1988) (en banc) (citing *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)); *see also Goodwin*, 457 U.S. at 372 ("[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

To assess this type of due process claim, the court determines whether or not the prosecution increased the charges based on the defendant's exercise of a constitutional, statutory, or procedural right. *See Blackledge*, 417 U.S. at 27-28. At the first step of the analysis, a defendant does not have to establish that the prosecutor in fact acted vindictively—e.g., "that the prosecutor acted in bad faith or that he maliciously sought the new or enhanced charges." *United States v. Jenkins*, 504 F.3d 694, 699-700 (9th Cir.

2007) (internal citations and quotation marks omitted); *see also Adamson*, 865 F.2d at 1017 ("No actual showing of malice or retaliatory motive is necessary to assert a vindictive prosecution claim."). Rather, because "[m]otives are complex and difficult to prove[,]" *Goodwin*, 457 U.S. at 373, the defendant only needs to show that "the circumstances surrounding the prosecutorial decision at issue create the appearance of vindictiveness," *Adamson*, 865 F.2d at 1017; *see also United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978) ("it is the *appearance of vindictiveness* rather than *vindictiveness, in fact*, which controls") (emphasis in original). The en banc Ninth Circuit has held that such an appearance arises from a superseding indictment "when the additional charges are based on the same conduct that was the subject of the first indictment, when the same sovereign was involved, and, most importantly, when the decision to file increased charges directly followed the assertion of a procedural right." *Garza-Juarez*, 992 F.2d at 907 (citing *Adamson*, 865 F.2d at 1018).

Once the defendant shows an appearance of vindictiveness, "vindictiveness will be presumed" and "the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose." *Adamson*, 865 F.2d at 1017, 1019. "The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government because the doctrine of vindictive prosecution 'seek[s] to reduce or eliminate apprehension on the part of the accused' that [he] may be punished for exercising [his] rights." *Jenkins*, 504 F.3d at 700 (quoting *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976)). This "prophylactic doctrine is designed, in part, to prevent chilling the exercise of legal rights by other defendants who must make their choice under similar circumstances in the future." *Id.* (internal citations and quotation marks omitted). Thus, when the government creates the appearance of vindictiveness by elevating the charges against a defendant after he exercises a protected right, "the reason for the increase in the gravity of the charges must be made to appear" by the government. *Ruesga-Martinez*, 534 F.2d at 1369.

**1. The circumstances and timing of the government's decision to charge Ms. Augustine with the Class C offense raises the appearance of vindictiveness.**

All three elements sufficient to trigger the presumption and shift the burden to the government are present here. The Class C offense was based on the same conduct, involved the same sovereign, and were prompted by the assertion of a procedural right. *Garza-Juarez*, 534 F.2d at 907.

First, the Second Superseding Information is "based on the same conduct that was subject" of both the initial complaint and the subsequent misdemeanor information. *Id.* The government admitted this in its Trial Brief. *See* Dkt. No. 42 at 4 ("Because the same, short sequence of events underlies all [] of the charges, the Government proposes having only one trial where the evidence is presented to the jury and Court at once, rather than two separate trials."). The Second Superseding Information alleges no new facts or conduct beyond those contained in the complaint. Thus, the government had all of the information it would have needed to pursue the Class C offense when the complaint was filed as well as when the initial misdemeanor information was filed. *See Adamson*, 865 F.2d at 1018 (presumption of vindictiveness raised where the prosecution sought the death penalty against the defendant "for the very same conduct" for which it had earlier found a lesser charge and penalty appropriate).

Second, all of the charging documents involved "the same sovereign," *Garza-Juarez*, 534 F.2d at 907—the federal government through the United States Attorney's Office in the Central District of California, which made all of the charging decisions.

Third, and "most importantly," the "increased charge[] directly followed" Ms. Augustine's "assertion of her procedural right" to proceed to a jury trial on the first setting. *Id.* The Second Superseding Information was filed one day before Ms. Augustine's jury trial and five days after she filed all of her pretrial documents, including motions in limine and proposed jury instructions. And by charging Ms. Augustine with a Class C misdemeanor, the government deprived Ms. Augustine of a full and complete

resolution of her charges by the jury. The close temporal proximity between Ms. Augustine's exercise of her right to a jury trial, and the government's escalation creates the appearance that the Second Superseding Information was responsive and retaliatory.

Further, the timing of these events within the broader context of the case compounds the appearance of vindictiveness. The government filed a felony complaint on July 25, 2025, only to dismiss it a few weeks later and file a misdemeanor information. At post-information arraignment on August 22, 2025, the case was set for trial on October 7, 2025. One day before that trial date, the government filed the Second Superseding Information. Thus, the government waited over two months between filing the complaint and adding the Class C charge—despite the fact that the Class C charge was undisputably based on the exact same conduct as that alleged in the complaint. Until just days before trial, government counsel never raised the possibility that additional charges could be added. Nor did the government raise this at the status conference held with the Court on September 22, 2025, just 15 days before trial. Dkt. No. 28. At that hearing, the Court confirmed that the case would proceed to a jury trial on October 7, 2025. *Id.* At no point did the government express its intent to add a non-jury charge or request that a court trial be held. *Id.* At the very least, the government's silence in that moment strongly suggests its decision to add the Class C count was not a long time coming or the product of ongoing investigation—but rather taken in the immediate aftermath of the government recognizing that Ms. Augustine intended to exercise her right to a jury trial. Under these circumstances, the government's choice to suddenly seek and obtain a superseding information just one day before the scheduled trial date is inherently suspect and clearly raises the appearance of vindictiveness.

This is precisely why courts apply a burden-shifting presumption as soon as vindictiveness appears. It is not just to protect Ms. Augustine's rights: it safeguards all defendants who might make a similar choice in the future, but would be apprehensive that the government could exact similar retribution. Once that appearance arises—and puts all defendants on alert that they should be wary of exercising their rights—it

becomes the government's responsibility to dispel that appearance and its resulting apprehension. *Jenkins*, 504 F.3d at 700 ("The 'prophylactic' doctrine is designed, in part, to prevent chilling the exercise of legal rights by other defendants who must make their choices under similar circumstances in the future." (cleaned up)).

The Ninth Circuit's decision in *Ruesga-Martinez* is particularly analogous and instructive here. There, the government elevated the defendant's misdemeanor unlawful entry charge under 8 U.S.C. § 1325 to a felony illegal entry under 8 U.S.C. § 1326 after he refused to sign a document that would have waived his right to be tried in front of a district judge. 534 F.2d at 1368. The Court found that "[w]hen the [defendant] refused to sign the waiver form, the ensuing increase in the severity of the charges against him created a sufficient appearance of vindictiveness" to "place the burden on the prosecution." *Id.* at 1369. Because the record contained "no evidence that justifie[d] the increase in the charges," the Court reversed and remanded with instructions that the district court dismiss the indictment. *Id.* at 1369, 1371. In so holding, the Court emphasized that the fact that there was sufficient evidence to support the felony charge did not "justify an increase in the severity of the charges . . . because that evidence was known to the prosecution before it brought the lesser charge." *Id.* at 1370.

Like in *Ruesga-Martinez*, here, the government increased the penalties against Ms. Augustine for the same conduct immediately following her exercise of her right to a jury trial. An appearance of vindictiveness is present in this case as it was in *Ruesga-Martinez*.

**2. The government cannot rebut the presumption of vindictiveness.**

"Once the presumption of vindictiveness is raised, the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose." *Adamson*, 865 F.2d at 1019 (citations omitted). The presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374.

While the government should be afforded an opportunity to explain its decision, all available objective information suggests it will ultimately fail.[2]

## IV. CONCLUSION

For the foregoing reasons, Ms. Augustine respectfully requests that the Court enter an order dismissing Count Two of the Second Superseding Information. In the alternative, Ms. Augustine requests (1) discovery on her selective prosecution claim; and (2) an evidentiary hearing on her vindictive prosecution claim.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 19, 2025 By */s/ Rebecca M. Abel*

REBECCA ABEL
ADEN KAHSSAI
Deputy Federal Public Defenders
Attorneys for ALEXANDRIA AUGUSTINE

---

[2] Should the government attempt to justify the decision to charge Ms. Augustine with the Class C offense in its response, Ms. Augustine requests an evidentiary hearing to test that justification. *See Adamson*, 865 F.2d at 1020 (reversing and remanding for an evidentiary hearing where the defendant "made an initial showing to raise a presumption of vindictiveness" and the government's proffered reasons did not definitively rebut it).