**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:25-cr-00678-KS |
| Plaintiff, | MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION, OR IN THE ALTERNATIVE FOR DISCOVERY AND AN EVIDENTIARY HEARING [DKT. NO. 94] |
| v. | |
| ALEXANDRIA AUGUSTINE, | |
| Defendant. | |

Before the Court is Defendant's Motion to Dismiss for Selective and Vindictive Prosecution, or in the Alternative for Discovery and an Evidentiary Hearing (the "Motion") in which Defendant seeks dismissal of a Class C misdemeanor charging her with a violation of 40 U.S.C. § 1315(c) and 41 C.F.R. § 102-74.385: "Failing to Comply with Official Signs and Directions." (Mot. at 5.) Specifically, the government alleges that Defendant "knowingly and willfully failed to comply with the lawful directions of Federal police officers and other authorized individuals, namely, employees of the Federal Protective Service." (Dkt. No. 67 at 2.) A bench trial is scheduled in this matter for April 14, 2026. On April 8, 2026, the Court heard oral argument on the Motion and took the matter under submission. (Dkt. No. 123.)

For the reasons outlined below, the Motion is DENIED.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2025, in response to increased federal immigration enforcement actions, waves of citizen protests, mostly peaceful, occurred in Los Angeles. The Roybal Federal Building became (and remains) a frequent focal point for such demonstrations. In July 2025, Defendant Alexandria Demetrius Augustine ("Ms. Augustine") was among a group of vocal protestors at the Alameda Street entrance to the Roybal Federal Building. On July 25, 2025, Ms. Augustine was arrested and charged in a felony criminal Complaint with a violation of 18 U.S.C. § 111 for assault on a federal officer. Ms. Augustine made an initial appearance on the Complaint on July 28, 2025. (Dkt. No. 6.) On August 15, 2025, the government moved to dismiss the felony Complaint and the assigned magistrate judge entered dismissal on August 18, 2025. (Dkt. Nos. 15, 16.) Also on August 15, 2025, the government filed an Information charging Ms. Augustine with assault of a federal officer under 18 U.S.C. §111(a)(1), a Class A misdemeanor based on the conduct alleged in the Complaint. (Dkt. No. 17.) Ms. Augustine appeared for arraignment on the misdemeanor Information on August 22, 2025. (Dkt. No. 20.) The case was then assigned to the calendar of U.S. District Judge John F. Walter who set a jury trial for October 7, 2025. (*Id.*)

On September 8, 2025, Ms. Augustine filed a consent to proceed before a Magistrate Judge and on September 22, 2025, after a status conference, the case was assigned and transferred to the undersigned Chief U.S. Magistrate Judge, who set a jury trial for October 7, 2025. (Dkt. Nos. 22, 28.) While awaiting trial, Ms. Augustine declined a plea offer extended by the government, electing instead to proceed to trial. (Mot. at 5.)

On September 29, 2025, in a Superseding Information, the government added two additional charges: Count Two, violation of 41 C.F.R. § 102-74.390(c): causing a disturbance by impeding or disrupting the performance of official duties by government employees; and Count Three, a violation of 41 C.F.R. § 102-74.385: failure to comply with official signs and

directions. (Dkt. No. 65.)[1] On October 3, 2025, after initially opposing Ms. Augustine's effort to seek dismissal of Counts Two and Three based on multiplicity and duplicity (dkt. no. 32), the government indicated that it would voluntarily dismiss Count Two (dkt. no. 53). The government then filed a Second Superseding Information charging Count One, Assault on a Federal Officer in violation of 18 U.S.C. § 111(a)(1), a Class A Misdemeanor; and Count Two, Failing To Comply with Official Signs and Directions in violation of 41 C.F.R. § 102-74.385, a Class C Misdemeanor. (Dkt. No. 67.)

As emphasized in the Motion, the addition of the Class C misdemeanor count increased the possible penalties Ms. Augustine faced. (Mot. at 6.) The Class A misdemeanor charge carries a maximum sentence of 12 months imprisonment, a fine of up to $100,000, and up to 5 years of probation. (*Id.*) The additional Class C misdemeanor count carries a maximum penalty of 30 days imprisonment, a fine of up to $5,000, and up to 1 year of probation. (*Id.*) On October 1, 2025, Defendant filed a Motion for a Jury Trial on All Counts. (Dkt. No. 34.) The government opposed that motion. (Dkt. No. 50.) On October 6, 2025, this Court denied Defendant's request, declining to exercise its discretion to grant a jury trial on the Class C misdemeanor charge. (Dkt. No. 54 at 3.)

On October 7, 2025, the jury trial commenced on the Class A misdemeanor in Count One, Simple Assault on a Federal Officer, as charged in the Second Superseding Information. (Dkt. No. 73.) On October 10, 2025, following a four-day jury trial, Ms. Augustine was found not guilty of the assault charge. (Dkt. No. 85 (Redacted Jury Verdict).) A bench trial on the remaining Class C misdemeanor, initially scheduled for January 27, 2026 (dkt. no. 88), is now scheduled to commence on April 14, 2026 (dkt. no. 101).
\\

---

[1] 41 C.F.R. § 102-74.385 requires, with respect to persons on federal property, that "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal police officers and other authorized individuals."

3

## THE PARTIES' ARGUMENTS

## DEFENDANT'S MOTION

### 1. Selective Prosecution

Ms. Augustine argues that in pursuing the Class C misdemeanor prosecution, the government has engaged in selective prosecution because, while other protestors were unlawfully present on federal property at the Roybal Federal Building on the evening Ms. Augustine was arrested, only Ms. Augustine was arrested. (Mot. at 8.)  Further, the defense points out that evidence from the jury trial "demonstrated an intent to target Ms. Augustine for her speech." (*Id.*)  Ms. Augustine points to the fact that Officer Guiterrez, one of the Federal Protective Service ("FPS") officers responsible for protecting the Roybal property on the evening in question, identified Ms. Augustine as one of the protest "leaders" who had participated in prior protests at or around the Roybal property. (*Id.* at 9.)

Videotape evidence admitted at the trial on the Class A misdemeanor showed numerous individuals on the evening of Ms. Augustine's arrest who had moved from the public sidewalk along the Alameda Street entrance to the Roybal Building onto federal property that comprises the rear entryway/driveway, sometimes referred to as the "apron" of the federal building.  Ms. Augustine points out that before her arrest, Officer Guitierrez issued verbal warnings to other protestors that evening, telling them that they were trespassing on federal property, "[y]et none of these people were arrested or prosecuted except Ms. Augustine." (*Id.*)  As further evidence that she was allegedly targeted for arrest, Ms. Augustine points to video evidence admitted at trial showing that Officer Guitierrez approached Ms. Augustine and, "standing inches away from Ms. Augustine" prior to her arrest, stated, "You're next." (*Id.* at 10.)

\\

Ms. Augustine argues that the circumstances of her arrest indicate "clear evidence" of both discriminatory intent and discriminatory effect sufficient to support her claim of selective prosecution. (*Id.* at 8-10.) She points to evidence from the Class A misdemeanor trial, where she was ultimately acquitted, as "more than enough to demonstrate discriminatory effect to warrant dismissal, or at a minimum, to obtain discovery on the selective prosecution claim." (*Id.* at 12.)

### 2. Vindictive Prosecution

Ms. Augustine further contends that in pursuing the Class C misdemeanor charge against her, the government has engaged in vindictive prosecution. Specifically, Ms. Augustine argues that her due process rights have been violated because she is being prosecuted for exercising her constitutional rights of free speech and right to protest government actions. (*Id.* at 12-13.) She argues that the government's pursuit of its claims against her shows that "the circumstances surrounding the prosecutorial decision at issue create the appearance of vindictiveness." (*Id.* at 13 (citing, *inter alia, Adamson v. Ricketts*, 865 F.2d 1011, 1017 (9th Cir. 1998).)

Ms. Augustine argues that the circumstances and timing of the government's decision to charge her with the Class C offense raise an appearance of vindictiveness for at least three reasons. (*Id.* at 14.) First, the Second Superseding Information arises from the same conduct that supported "both the initial complaint and the subsequent misdemeanor information." Second, the same sovereign is involved in all the charging documents. (*Id.*) Third, Ms. Augustine maintains that a finding of vindictive prosecution is warranted here because the government's decision to file the Class C offense followed directly from Ms. Augustine's "assertion of a procedural right" to proceed to a jury trial on the Class A assault charge. (*Id.*) Ms. Augustine argues that the government cannot rebut the presumption of vindictiveness. (*Id.* at 16-17.)

In the alternative, Ms. Augustine seeks discovery on her selective prosecution claim, and an evidentiary hearing on her vindictive prosecution claim. (*Id.* at 17.)

**THE OPPOSITION**

The government argues that Ms. Augustine fails to present "clear evidence" of selectivity in her prosecution based on her race, religion, or the exercise of a constitutional right so as to violate the Fifth Amendment's equal protection provisions. (Opp'n at 6.) The government argues that Ms. Augustine "cannot identify individuals who were 'similarly situated' to [Ms. Augustine] but were not prosecuted." (*Id.* at 9.) Specifically, the government rejects Ms. Augustine's argument that a "similarly situated" group included other protestors who trespassed on federal property along with Ms. Augustine on the evening that she was arrested, but were not themselves arrested. (*Id.* at 10.) The government maintains that other trespassing protestors are not "similarly situated" for purposes of a selective prosecution analysis because "none of the proffered comparators threw an umbrella at law enforcement" and "were not even identified until they chose to testify in this case." (*Id.* at 10.)

Relying on *United States v. Wilson*, 123 F.4th 1021 (9th Cir. 2024), the government, insists that Ms. Augustine fails to account for "other facets of the crime" that "would allow this Court to appropriately compare defendant to uncharged individuals." (*Id.* at 11.) In particular, the government maintains that Ms. Augustine's conduct in tossing an umbrella toward Officer Guitierrez created a different context where the priority for officers in that moment was her arrest for simple assault compared to what was needed to address conduct by other protestors who were marking on the ground with chalk or shining lights at the officers. (*Id.* at 11-12.) Thus, the government insists, those other protestors are not appropriate comparators to establish a selective prosecution claim. (*Id.*) Therefore, the government argues, the conduct of those other protestors who also may have unlawfully entered onto federal property neither provides

6

a basis for an order requiring the government to produce selective prosecution discovery, nor supports an evidentiary hearing. (*Id.* at 12.)

As to the assertion of vindictive prosecution, the government points out that the Ninth Circuit has cautioned that the presumption of vindictiveness is a severe one that "generally arises only when the government increases charges after trial or during trial, not before it." (*Id.* at 8 (citing *United States v. Goodwin*, 457 U.S. 368, 376-77 (1982).) The government maintains that Ms. Augustine fails to raise a presumption of any vindictive motive by the government in prosecuting the Class C misdemeanor outlined in the Second Superseding Information. (*Id.*) The government emphasizes that Ms. Augustine bears the burden to raise a presumption of vindictiveness, and "[o]nly in the rare instance when defendant establishes facts sufficient to trigger a presumption of vindictiveness does the burden shift back to the government to rebut it." (*Id.* (citing *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980)).) The government insists that Ms. Augustine offers no evidence of discriminatory effect based on her engaging in protected speech or conduct and "[b]ecause there is insufficient evidence of discriminatory effect, the Court need not reach the issue of intent." (*Id.* at 12 n.6.)

The government underscores that Defendant has presented no evidence that "she was prosecuted because of her protected activity." (*Id.* at 13.) The government argues that Ms. Augustine takes out of context a statement in an interview by First Assistant United States Attorney Bilal Essayli that the government would prosecute "leaders" of the immigration protest movement, when other statements by Mr. Essayli indicate his intent to prosecute protestors who "touch" federal officers. (*Id.*) With respect to a statement by Officer Guitierrez that Ms. Augustine would be "next" if she continued onto federal property,[2] the government maintains that this comment supports the charges here and not the allegation "that Officer

---

[2] Officer Guiterrez's verbal warning to Ms. Augustine earlier in the evening as he and other officers patrolled the perimeter of the Roybal entrance, was captured on video that was admitted into evidence at Ms. Augustine's trial for assault on a federal officer.

Gutierrez was trying to punish defendant for engaging in speech, rather than trying to make clear that she needed to stay off of federal property or she would be charged." (*Id.* at 14.) The government also notes that Officer Guitierrez's comment and/or subjective intent is not dispositive here, because in a selective prosecution case, the decision to prosecute rests with the Assistant United States Attorney, not with Officer Guitierrez. (*Id.*) Moreover, the government insists, even if Officer Guitierrez's conduct "involved an improper discriminatory motive," that fact would not be sufficient to undermine the entire prosecutorial process. (*Id.* (citing *United States v. Waw*, NO. 09CR3138-LAB, 2010 WL 11545324 (S.D. Cal. Feb. 10, 2010).)

No reply was filed.

## LEGAL STANDARDS

### A.  Selective Prosecution

The Supreme Court has recognized the power to prosecute as "one of the core powers of the Executive Branch of the Federal government." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, it is well recognized that prosecutors have "broad discretion to decide whom to prosecute." *United States v. Culliton,* 328 F.3d 1074, 1081 (9th Cir. 2003) (internal citations omitted).  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  A prosecutor's broad discretion is constrained, however, by the equal protection component of the Fifth Amendment's Due Process clause and "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong,* 517 U.S. 456, 464 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962).)

To prove a selective prosecution claim, the claimant must show that the prosecutorial policy had both a discriminatory effect *and* was motivated by a discriminatory purpose. *Id.* at 465. The defendant "must demonstrate that (1) other similarly situated individuals have not been prosecuted and (2) [her] prosecution was based on an impermissible motive." *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007.) In order to overcome the "presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Armstrong*, 517 U.S. at 465.

## B. Vindictive Prosecution

"A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). "A defendant may establish vindictive prosecution (1) by producing direct evidence of the prosecutor's punitive motivation, or (2) by showing that the circumstances establish a reasonable likelihood of vindictiveness, thus giving rise to a presumption that the government must in turn rebut." *United States v. Kent*, 649 F.3d 906, 912-13 (9th Cir. 2011) (internal citations omitted). "[T]he mere appearance of vindictiveness is enough to place the burden on the prosecution." *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976).

If the defendant is successful in shifting the burden to the government, the Court must then determine whether the prosecutor has presented "sufficient evidence to dispel any appearance of vindictiveness." *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). Specifically, the government must establish that the additional charges "did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982). But "the appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood or prosecutorial conduct that would not have

occurred but for hostility or a punitive animus towards the defendant because [s]he has exercised [her] specific legal rights." *Id.* at 1164 (internal citation omitted).

Before any presumption attaches, the defendant must first prove an improper prosecutorial motive. *See United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993) (requiring "[e]vidence indicating a realistic or reasonable likelihood of vindictiveness"). Moreover, "the Supreme Court has urged deference to [the prosecutor's] pretrial charging decisions." *Kent*, 649 F.3d at 913. But even where a presumption of vindictiveness is unavailable, "a defendant may still establish vindictive prosecution by adducing direct evidence that punitive motives precipitated the harsher charges." *Id.* at 914 (citing *Goodwin*, 457 U.S. at 384.

## DISCUSSION

After a thorough review of the applicable legal standard and the parties' arguments and evidence, the Court concludes that Ms. Augustine fails to satisfy the demanding standard to demonstrate selective prosecution and fails to raise a presumption of vindictive prosecution sufficient to warrant dismissal of the Class C misdemeanor charge alleged in the Second Superseding Information or to require discovery and an evidentiary hearing on these issues.

### A. Selective Prosecution

As emphasized above, selective prosecution claims are analyzed under equal protection standards. *Armstrong*, 517 U.S. at 465. Here, Ms. Augustine asserts that evidence adduced at the jury trial on the Class A misdemeanor offense "demonstrated an intent to target Ms. Augustine for her speech." (Mot. at 8.) The Court is unpersuaded by Ms. Augustine's characterization of events on the evening of her arrest.

10

The evidence adduced at the trial, where the jury found her not guilty of assault on a federal officer, established that prior to her arrest, Ms. Augustine had been protesting loudly with a bullhorn *from across the street* near the rear entrance to the Roybal Federal Building and that she was among a group of protestors who would regularly gather to express their disagreement with current immigration enforcement activity.  Ms. Augustine's protest activity, whether as a supposed "leader" or merely as a participant, was an unquestioned exercise of her First Amendment right to free speech.  But the evidence adduced at the trial clearly demonstrated that her vocal participation in the protests alone was *not* the conduct that led to her arrest later that evening.  The defense makes much of the fact that Ms. Augustine was described as "one of the leaders" of the protestors who regularly protested near the Alameda Street entrance to the Roybal Federal Building.  (Mot. at 8-9.)  But that fact is not dispositive here.  There is no evidence that Ms. Augustine was ever arrested, approached or cautioned about any prior protest activity on other dates.

It was only when she entered onto federal property, specifically what was described as the rear "apron" of the Roybal Building, as federal officers described this area at the assault trial, that Ms. Augustine was cautioned by Officer Guitierrez, and ultimately arrested.  There is no evidence that the exercise of Ms. Augustine's right of free speech on the evening in question formed the basis for the Class C misdemeanor charge of Failing To Comply with Official Signs and Directions in violation of 41 C.F.R. § 102-74.385.  Moreover, Ms. Augustine has not carried her burden to establish that the government's decision to prosecute her in the Second Superseding Information for the Class C misdemeanor was motivated by any discriminatory intent.

Although Ms. Augustine points to other protestors who ventured onto federal property on the same evening that she was arrested, who themselves were not arrested, the selective prosecution claim fails because she has not established that her arrest and prosecution for this offense were based on any arbitrary classification or impermissible motive.  The Class C

11

misdemeanor charge was brought *prior* to trial along with a charge for assault on a federal officer (a charge for which she was acquitted by a jury).  It is undisputed that other individuals also entered onto federal property, yelled and shouted at FPS officers in a tense and somewhat chaotic encounter after dark, and some even wrote protest slogans on the driveway concrete.  But, unlike Ms. Augustine, no other individuals in the protest group engaged in any physical encounter with any FPS officers while on federal property.  Thus, the other individuals were not "similarly situated."  Furthermore, there is no record evidence that the charges against Ms. Augustine were brought for any discriminatory purpose that implicates equal protection concerns.  Thus, in the absence of evidence of both discriminatory effect and discriminatory motivation in the government's charge against Ms. Augustine, the selective prosecution claim fails.

### B.  Vindictive Prosecution

As discussed above, a prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right.  *Gamez-Orduno*, 235 F.3d at 462.  "A defendant may establish vindictive prosecution (1) by producing direct evidence of the prosecutor's punitive motivation, or (2) by showing that the circumstances establish a reasonable likelihood of vindictiveness, thus giving rise to a presumption that the government must in turn rebut."  *Kent*, 649 F.3d at 912-13.  The Ninth Circuit has cautioned that the presumption of vindictiveness is a "severe one that should not be invoked lightly."  *Gallegos-Curiel*, 681 F.2d at 1171.

Here, Ms. Augustine fails to present sufficient evidence to raise a presumption of vindictiveness by the prosecutor.  First, the defense fails to produce any "direct evidence" that the prosecutor had a punitive motive in seeking charges against Ms. Augustine.  The record is undisputed that from the outset, the prosecutor brought Class A, Class B, and Class C misdemeanor charges against Ms. Augustine related to her conduct.  The fact that the Acting

United States Attorney at the time, Mr. Essayli, held a press conference stating the policy of his office to prosecute individuals who may "assault" federal officers does not demonstrate "direct" evidence of any punitive motivation for charges against Ms. Augustine.

Second, Ms. Augustine has not established that she was prosecuted *because* of her exercise of a fundamental right. The Constitution unquestionably affords Ms. Augustine a right to free speech and our democracy rests on the foundation of citizens' freedom to vocally express their views, even when such views challenge government actions and policies. But the First Amendment protection for freedom of expression does not afford citizens any protected right to trespass on federal property.

Evidence presented at Ms. Augustine's assault trial established that: (1) signs identifying the federal property were visible at the rear of the Roybal Building on the evening in question; (2) other protestors who were with Ms. Augustine on the evening of her arrest testified that they knew they had entered onto federal property. Indeed, as the defense acknowledges, this was the very reason those witnesses were advised, prior to their testimony, of their potential legal jeopardy and did, in fact, have an opportunity to confer with independent counsel before testifying under oath at Ms. Augustine's assault trial. Finally, there was no evidence presented at trial that any other protestors that evening had any physical interaction with the FPS officers at the scene. Accordingly, because the defense has not presented any direct evidence of the prosecutor's punitive motivation or any circumstance that suggests a likelihood of vindictiveness as the basis for prosecuting Ms. Augustine, the vindictive prosecution claim fails.

\\
\\
\\
\\
\\

## CONCLUSION

For the reasons discussed above, the Court finds that Defendant fails to establish either selective or vindictive prosecution.  Accordingly, Defendant's Motion (Dkt. No. 94) is **DENIED** in its entirety and neither discovery nor an evidentiary hearing is warranted.

**IT IS SO ORDERED.**

DATED: April 13, 2026

_____
KAREN L. STEVENSON
CHIEF UNITED STATES MAGISTRATE JUDGE