**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALEXANDRIA AUGUSTINE,<br><br>　　　　　Defendant. | NO. 2:25-cr-00678-KS<br><br>**MEMORANDUM AND ORDER RE:**<br><br>**(1) FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL;**<br>**(2) DEFENDANT'S RULE 29 MOTION;**<br>**(3) BENCH TRIAL VERDICT** |

Following a two-day bench trial, the Court makes the following Findings of Fact and Conclusions of Law with respect to the Government's charge against Defendant Alexandria Demetrius Augustine ("Defendant") of violating 41 C.F.R. § 102-74.385: Failing to Comply with Official Signs and Directions, a Class C misdemeanor.  (Dkt. 67.)

### FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2025, the Government filed a Second Superseding Information charging Defendant with two misdemeanors counts: (1) violation of 18 U.S.C. § 111(a)(1): Simple Assault on Federal Officer or Employee, a Class A misdemeanor; and (2) violation of 40 U.S.C. § 1315(C) & 41 C.F.R. § 102-74.385: Failing to Comply with Official Signs and Directions, a

1

Class C misdemeanor.  (Dkt. 67.)  On October 10, 2026, following a four-day jury trial, the jury acquitted Defendant on the Class A misdemeanor.  (Dkt. No. 67.)

On April 14 and 15, 2026, the Court held a bench trial on the remaining Class C misdemeanor charge.  (Dkt. Nos. 138, 139.)  On April 14, 2026, at the close of the Government's case-in-chief, Defendant filed a Motion for Judgment of Acquittal on Count Two Under Federal Rule of Criminal Procedure 29 ("Rule 29 Motion").  (Dkt. No. 130.)  On April 15, 2026, the Court took Defendant's Rule 29 Motion under submission, closing arguments were made, and the case was submitted for decision.  (Dkt. No. 139.)  The Court ordered the parties to file their proposed Findings of Fact and Conclusions of Law by May 30, 2026. (Dkt. No. 139.)  On June 29, 2026, following several stipulations to continue the filing deadline[1], the parties each filed their Findings of Fact and Conclusions of Law. (Dkt Nos. 153, 152.)

**FINDINGS OF FACT**

The following findings of fact are based on all the evidence presented at the April 14-15, 2026 bench trial, and, pursuant to the parties' stipulation, the evidence, including exhibits and testimony, admitted at the jury trial held on October 7-10, 2025 on the 18 U.S.C. § 111(a) charge.

I. **The Roybal Federal Building and Its Rear "Apron"**

1. The Roybal Federal Building ("Roybal") is located at 255 East Temple Street Los Angeles, California.  The building belongs to the federal government and is owned and operated by the General Services Administration ("GSA").  (4/14/26 Tr., FPS Inspector Alexandro

---

[1] *See* Orders re: Stipulation to Continue Filing Deadline at docket nos. 147, 148, 151.

Gutierrez, 78:12-79:15; 10/9/25 Tr., FPS Inspector Lucas Riley, 33:23-34:3; Ex. 2.) The vehicle barricades are located inside the rear driveway area and loading dock on federal property, up against the public sidewalk. (Ex. 2; 4/14/26 Tr., FPS Assistant Program Manager Sermons, 185:24-186:4.)

2. The Roybal loading dock at the rear of the building facing Alameda Street, often referred to as the "apron," provides an entrance and exit to the underground parking facility at Roybal and extends from the Roybal building to the sidewalk on Alameda Street. (Exs. 1 and 2; *and see* 4/14/26 Tr., FPS Inspector Alexandro Gutierrez, 78:12-79:15; 10/9/25 Tr., FPS Inspector Lucas Riley, 33:23-34:3; Ex. 2.)

3. The "apron" is also federal property controlled by GSA. (4/14/26 Tr., Woods, 40:24-41:1; 10/8/25 Tr., Lucas Riley, 33:16-18.)

4. Federal Protective Service ("FPS") protects GSA-controlled facilities as law enforcement, including the Roybal building and the apron. (4/14/26 Tr., Sermons, 196:20-23; 10/8/25 Tr., Riley, 30:14-18.) Federal regulations promulgated to regulate GSA-owned facilities were posted on the pillars located on the Roybal loading dock facing the apron, and these signs were present on July 24, 2025 and stated that individuals must comply with the lawful directions of FPS officers. (4/14/26 Tr., Sermons, 177:6-179:16; Exs. 3-5.) The presence of GSA signs, such as these, indicate property is maintained by GSA. (4/14/26 Tr., Woods, 64:18-24.)

5. There is a Veteran's Affairs ("VA") building adjacent to Roybal that is located on Temple Street and Alameda Street, with its front entrance on Temple Street. (4/14/26 Tr., FPD Investigator Foongy Lee, 254:7-15.) The signs posted at the front entrance of the VA building on Temple Street cite the Code of Federal Regulations issued to regulate VA property, and these regulations differ from the GSA regulations posted at the Roybal loading dock. (4/14/26 Tr., Lee, 256:23-258:5; Exs. 241, 244, 246.)

\\

\\

3

**II.    Defendant's Arrest on July 24, 2025**

6. In June and July 2025, groups of people frequently gathered on Alameda Street near the apron at Roybal to protest the administration's immigration policies. (4/15/26 Tr., Defendant Alexandria Augustine, 30:25-31:1; 4/14/26 Tr., Alissa Guzman, 276:9-19; 10/8/25 Tr., Sermons, 123:15-18.)

7. In June and July 2025, Defendant regularly protested at the Roybal apron and testified that she was at the Roybal apron as often as she could, starting on July 11, 2025 and including on the day of her arrest. (4/15/26 Tr., Augustine, 31:10-33:17.)

8. On July 24, 2025, defendant arrived at the apron around 7:00 p.m., with security camera footage showing her there by 8:01 p.m. (4/15/26 Tr., Augustine, 40:19-23, 46:12-17; Ex. 19; Ex. 20 at 1.)

9. Surveillance footage from the Roybal apron shows Defendant standing on the apron throughout the evening, including at 8:01 p.m., 8:17-8:19 p.m., 8:21 p.m., 8:29-8:30 p.m., and 9:28 p.m. (Exs. 19-20; 4/14/26 Tr., Sermons, 184:21-187:4; 4/15/26 Tr., Augustine, 46:18-47:10, 48:24-49:14, 50:1-13, 51:4-10.)

10. Officer Sermons testified that on July 24, 2025, FPS ordered protestors to disperse and leave federal property, namely the Roybal apron, numerous times, both orally and via a long-range acoustic device ("LRAD") speaker system. (4/14/26 Tr., Sermons, 181:2-8; 181:12-20; 10/8/25 Tr., Riley, 90:13-20.) Sermons testified that the LRAD announcements are loud and informed protestors that if they did not leave the apron, they would be subject to arrest or citation. (4/14/26 Tr., Sermons, 181:21-181:13.)

11. At approximately 10:40 p.m., a large crowd gathered on and near the apron. (Ex. 144; 4/14/26 Tr., Gutierrez, 80:3-11). FPS Officer Gutierrez told the crowd multiple times to step off federal property. (4/14/26 Tr., Gutierrez, 80:3-11.)

12. Officer Gutierrez specifically saw Defendant, moved his hand in a waving motion, and warned Defendant, who was standing near a column that is on federal property designating the Metropolitan Detention Center, "You're next." (Ex. 144; 4/14/26 Tr., Gutierrez, 80:3-

23; 10/9/25 Tr., Gutierrez, 21:17-22:23.) Officer Gutierrez testified that his statement "You're next" was intended to indicate that if Defendant kept coming on federal property, she would be detained. (*Id*.)

13. At 11:20 p.m., approximately 39 minutes after the encounter with Gutierrez, several protestors came many feet onto the apron and flashed a high-powered flashlight at federal officers. (4/14/26 Tr., Gutierrez, 84:10-85:3; 10/9/25 Tr., Gutierrez, 23:5-24:12.) At this time, Defendant was located on the far side of Alameda Street, on the other side of a large two-way street. (4/14/26 Tr., Gutierrez, 84:10-85:10.) Defendant proceeded to run from the far side of Alameda Street onto the apron, carrying an umbrella. (Ex. 6; Ex. 7; Ex. 19; Ex. 144; 4/15/26 Tr., Augustine, 66:25-67:22; 4/14/26 Tr., Gutierrez, 85:14-86:2; 10/8/25 Tr., Riley, 42:12-16.)

14. Defendant ran approximately 5 to 10 feet onto federal property, past the vehicle barriers and bollards on the apron, which were marked with police "Do Not Cross" yellow tape at the time. (Ex. 9A-2; 4/14/26 Tr., Gutierrez, 87:7-89:3; 4/15/26 Tr., Augustine, 86:9-87:19, 94:5-16; 10/8/25 Tr., Riley, 42:17-19; 10/9/25 Tr., Gutierrez, 72:13-15.)

15. FPS officers approached the crowd of protestors that were now on the Roybal apron. (10/9/25 Tr., Gutierrez, 23:2-24:12; Ex. 6.) Defendant thrusted an open umbrella between a protestor on the ground and the officers to shield the protestors from the officers. (10/9/25 Tr., Gutierrez, 23:2-24:12.) Inspector Gutierrez grabbed the umbrella to move it out of the way and in doing so, tore the fabric from the frame of the umbrella, leaving Defendant holding the skeleton of the umbrella in her hand. (*Id*.) Defendant then proceeded to throw the umbrella skeleton into the air toward Inspector Gutierrez. (*Id.; see also* Exs. 8-10.)

16. As a result, Defendant was arrested for assault on a federal officer.[2]

\\

---

[2] Defendant was acquitted of that charge on October 10, 2025, following a four-day jury trial. (Dkt. No. 76.)

### III.    Defendant's Presence at Roybal Prior to July 24, 2025

17. During the summer of 2025, Defendant saw many of the same officers at the Roybal apron almost every day. (4/15/26 Tr., Augustine, 31:10-33:17.) In July 2025, FPS Inspector Sermons was deployed to Roybal to protect the building and was stationed in the apron area on Alameda Street. (4/14/26 Tr., Sermons, 175:24-176:5.) Sermons encountered Defendant protesting at the apron almost every day between July 9 and July 24, 2025. (4/14/26 Tr., Sermons, 187:22-188:5.)

18. On several occasions prior to July 24, 2025, Defendant had helped Inspector Sermons get protestors off federal property and onto the sidewalk. (4/14/26 Tr., Sermons, 194:10-195:4, 196:2-5.) In these instances, Sermons had asked Defendant for help and she complied. (4/14/26 Tr., Sermons, 195:14-196:1.) Defendant had pulled protestors back across the line, off the apron and federal property so they would not get cited or arrested. (4/14/26 Tr., Sermons, 217:5-25.)

19. Defendant confirmed she had some good interactions with Sermons. (4/15/26 Tr., Augustine, 38:13-15.) During these prior interactions, Sermons had also told Defendant not to be on federal property past the property line. (4/14/26 Tr., Sermons, 195:5-13.)

20. Beginning in June 2025, FPS Inspector Gutierrez was deployed to Roybal. (4/14/26 Tr., Gutierrez, 73:15-74:6.) During his shifts, Gutierrez saw Defendant protest regularly at the apron prior to July 24, 2025 and identified her as one of the main organizers of the protests. (4/14/26 Tr., Gutierrez, 73:15-74:6.)

21. Inspector Gutierrez saw her both early in the morning and at night. On more than one occasion, Gutierrez spoke with Defendant in the morning to say hello and convey that FPS did not want any problems with the protestors. (4/14/26 Tr., Gutierrez, 74:7-75:6.) Gutierrez also asked Defendant to tell other protestors in the group not to come onto federal property or they would be subject to arrest or detainment. (4/14/26 Tr., Gutierrez, 74:7-75:6.)

**IV.    Defendant Acknowledged She and Other Protestors Entered Onto Federal Property**

22. Mr. Solorio and Ms. Guzman, who testified for the defense, indicated they regularly protested at the Roybal apron in July 2025, interacted with Defendant at protests, and were present the evening of July 24, 2025.  (10/9/25 Tr., Solorio, 222:11-24; 10/9/25 Tr., Guzman, 187:11-188:3; 4/14/26 Tr., Guzman, 276:9-25.)

23. Mr. Solorio and Ms. Guzman testified they were aware that the Roybal apron was federal property.  (10/9/25 Tr., Octovio Solorio, 223:3-14, 223:20-25, 224:1-6, 225:4-13; 10/9/25 Tr., Guzman, 198:9-14, 198:22-24, 200:2-22.)

24. Defendant testified that when she ran across Alameda Street to join other protestors on the evening of July 24, 2025, they were behind the vehicle barricades, at least five feet onto federal property.  (4/15/26 Tr., Augustine, 94:5-14.)

25. When specifically asked if she was on federal property, Defendant responded "yes."  (4/15/26 Tr., Augustine, 94:15-16.)

## CONCLUSIONS OF LAW

**I.    Elements of the Charged Offense: Violation of 41 C.F.R. § 102-74.385**

1. Section 102-74.385 outlines the policy concerning conformity with official signs of a prohibitory, regulatory, or directory nature and the lawful direction of Federal police officer and other authorized individuals.[3]

\\

---

[3] Defendant points out that 41 C.F.R. § 102-74.385 has been repealed as of December 16, 2025 and has been replaced by 6 CFRT § 139.  (*See* Dkt. No. 153 at n.1.)  Nevertheless, the parties do not dispute that Defendant was charged under 41 C.F.R. § 102-74.385.  Therefore, the Court's analysis of the evidence at trial is framed by the elements of 41 C.F.R. § 102-74.385.

2. To be found guilty of violating 41 C.F.R. § 102-74.385, the government must prove beyond a reasonable doubt each of the following elements:

1. Defendant was on property under the authority of the General Services Administration (GSA) at the time of the conduct;
2. The regulation proscribing the conduct was posted in a conspicuous place on the property that was reasonably calculated to impart notice to Defendant, or that Defendant received actual notice;
3. Defendant was given a lawful direction by a Federal Protective Services (FPS) officer;
4. Defendant failed to comply with that lawful direction; and
5. Defendant acted knowingly, willfully, and unlawfully.

41 C.F.R. § 102-74.385; *and see U.S. v. Bichsel*, 395 F.3d 1053, 1056 (9th Cir. 2005).

## II.    Conclusions of Law

Having considered all the evidence and testimony presented at trial, the Court concludes as follows:

### A. The charged offense occurred on property under the authority of GSA

3. Defendant maintains that the evidence at trial failed to establish beyond a reasonable doubt that the apron area at the rear of Roybal is "GSA property." (Dkt. No. 153 at 3.) Not so.
4. First, 41 C.F.R. § 102-74.385 does not require that the property be *owned* by GSA, rather, the regulation states that the alleged conduct must occur on property *under the authority of* GSA. Here, the trial testimony unequivocally demonstrated that the apron area of the Roybal Federal Building, an area that Defendant frequented during June and July 2025 as

8

an "organizer of the regular group of protestors" and where Defendant had on prior occasions assisted FPS officers to keep fellow protestors off of the apron to avoid the protestors being detained, was property under the authority of GSA.  Indeed, in the Defendant's Proposed Findings of Fact and Conclusions of Law, Defendant acknowledges that the plain language of the first section of the regulation outlining to whom the subpart applies states: "the rules in this subpart apply to all property *under the authority* of GSA and to all persons entering in or on such property."  41 C.F.R. § 102-74.365 (emphasis added).)  Furthermore, authorities upon which Defendant herself relies confirm as much. (Dkt. No. 153 at 3 (citing *United States v. Zagoroskaya*, 628 F. Appx 503, 504 (9th Cir. 2015) and *United States v. Moriello*, 980 F.3d 924, 934 (4th Cir. 2020).).

5. The testimony of GSA Civil Engineer Mark Woods at the prior jury trial and at the bench trial established beyond a reasonable doubt that Roybal is "under the authority of GSA." (4/14/26 Tr., GSA Civil Engineer Mark Woods, 28:6-17, 58:4-14.)

6. The trial evidence established that Defendant was aware that she was indeed on federal property under the authority of GSA because of her repeated interactions during the June/July 2025 time period at the Roybal apron as part of the regular protest group and her own interactions with FPS officers, whom she had occasionally assisted to keep other protestors off of the property. (4/14/26 Tr., Sermons, 194:10-195:4, 196:2-5.)  Accordingly, this element of the charge was established beyond a reasonable doubt.

**B. The regulation proscribing the conduct was not posted in a conspicuous place on the property that was reasonably calculated to impart notice to Defendant, but Defendant received actual notice.**

7. In *Bichsel*, the Ninth Circuit specifically considered what constitutes a "conspicuous place" for purposes of determining whether a defendant charged with violating 41 C.F.R. § 102-74.385 was given adequate notice of the regulation and concluded that "[w]ithin the meaning of a statute relating to the posting of notices, a 'conspicuous place' means one

9

which is reasonably calculated to impart the information in question." *Bichsel*, 395, F.3d at 1055.  Specifically, in *Bichsel*, the Ninth Circuit reasoned that although signs in a courthouse were posted on bulletin boards near a mailbox lobby and near elevator buttons, these notices were not 'conspicuous" for purposes of giving adequate notice because persons entering the courthouse "would never see the posted notice." *Id.* at 1056 (internal quotation omitted).

8. The evidence adduced at trial in this case established that the federal regulations promulgated to regulate GSA-owned facilities were posted on the pillars of the Roybal loading dock facing the apron.  (Exs. 4, 5;  4/14/26 Tr., Gutierrez, 164:2-20.)  These signs were present on July 24, 2025 and stated that individuals must comply with the lawful directions of FPS officers.  (4/14/26 Tr., Sermons, 177:6-179:16; Exs. 3-5.)  The presence of such GSA signs indicates the property is maintained by GSA.  (4/14/26 Tr., Woods, 64:18-24.)

9. However, it was not established at trial that the signs at the Roybal Building entrance to the parking garage reasonably imparted conspicuous notice of the regulation or its requirements to individuals, including Defendant, who were on the portion of the apron closest to Alameda Street.

10. No testimony was elicited at trial that Defendant saw and/or could read the signs posted on the pillars.  Defendant testified that she never noticed the signs and that she could not read the signs form where she stood to protest.  (04/15/2026, Tr., at 44-45.)

11. The Court has also considered trial evidence introduced regarding warnings issued through an LRAD loudspeaker system and direct verbal instructions given to Defendant by FPS Officer Gutierrez.  LRAD warnings are typically issued to ask those on the apron to leave federal property and allow compliance before FPS officers engage more directly.   (4/14/26 Tr., Sermons, 247:21-24; 248:12-17.)

12.  According to an FPS dispatch log, FPS Inspector Degand issued warnings on the apron over an LRAD speaker system at 8:20 p.m., 8:31 p.m., 9:15 p.m., and 9:29 p.m. on July 24, 2025. (Ex. 216; 4/14/26 Tr.,  Sermons, 224:4-225:6;  226:2-13;  229:23-230:13;  231:22-232:18;

10

234:14-235:15; 236:11-20.) Both Sermons and Gutierrez testified that they heard these warnings that evening. (4/14/26 Tr., Gutierrez, 117:12-119:9; 4/14/26 Tr., Sermons, 181:21-182:13.) Officer Gutierrez testified that each warning advised protestors to stay off federal property or they would be subject to arrest. (Ex. 216 at 2-3, 13-15; 4/14/26, Tr., Gutierrez, 118:24-119:9.) The Court found the testimony regarding the LRAD warnings not entirely credible.

13. Although Sermons testified that LRAD warnings were issued at least three times as reflected in the LRAD log, the audio of the LRAD warning presented at trial was unintelligible over the shouting, banging of drums, and general cacophony of the protestors on the evening in question. There was no testimony adduced at trial to confirm that Defendant actually heard and/or understood any LRAD warnings that may have been broadcast via the LRAD on the evening of June 24, 2025. Thus, the Court finds that the Government failed to carry its burden to establish beyond a reasonable doubt that the LRAD warning provided actual notice to Defendant that she would be detained if she did not leave federal property.

14. Even in the absence of conspicuous posting, "an actual notice exception may be read into the statute." *Bichsel* at 1056. The Government points to statements by FPS Inspector Gutierrez as evidence of "actual notice" to Defendant that she could be detained and arrested for failing to comply with direct instructions to step off federal property. The trial evidence established that FPS Inspector Gutierrez personally told some of the protestors four to five times after his shift began at 6:00 p.m. to not come on federal property. (4/14/26 Tr., Gutierrez, 116:2-117:10.) But that evidence did not establishe beyond a reasonable doubt that FPS Inspector Gutierrez gave a direct, unequivocal warning to Defendant.

15. The trial evidence established that Inspector Guiterrez, after directing other protestors to get off of federal property, walked toward Defendant and stated, "You're next." (Ex. 144; 4/14/26 Tr., Gutierrez, 80:3-23; 10/9/25 Tr., Gutierrez, 21:17-22:23.) Inspector Gutierrez testified that his comment was meant to convey to Defendant that she should retreat from the apron area or she would be detained. (*Id.*) But, as shown in the video clip of the

11

interaction that was presented at trial, Inspector Gutierrez made no statement to Defendant about being detained.  (*Id.*) Rather, Officer Gutierrez merely waved his hand as he walked past Defendant and said, "You're next."

16. The statement "You're next" did not provide actual notice to Defendant that she faced the possibility of detention and/or arrest.  This is evident in Defendant's immediate and repeated question to Officer Gutierrez, "For what, bitch?" (Ex. 144; 4/14/26 Tr., Gutierrez, 80:3-23; 10/9/25 Tr., Gutierrez, 21:17-22:23), to which Inspector Gutierrez did not reply, but continued walking along the line of protestors.  There is no evidence in the trial record that during that encounter, Inspector Gutierrez ever answered Defendant with a clear and unequivocal direction that Defendant would be detained and possibly arrested for failing to comply with directions to step off the apron area at the Roybal Building.  As shown in the video evidence of the incident, Officer Gutierrez continued to walk past Defendant along the line of other protesters on the sidewalk adjacent to the Roybal apron who were shouting, singing, and banging drums.

17. Nevertheless, other evidence presented at trial established beyond a reasonable doubt that Defendant had *actual* notice that she was on federal property and could be subject to detention if she did not step off the property when instructed to do so.  Defendant acknowledged that she participated as an "organizer" of regular groups of protestors at the rear of the Roybal Building that abuts Alameda Street and saw the same officers at the Roybal apron almost every day in summer 2025.  (4/15/26 Tr., Augustine, 31:10-33:17.) FPS Officer Sermons testified that he encountered Defendant  protesting at the apron almost every day between July 9 and July 24, 2025.  (4/14/26 Tr., Sermons, 187:22-188:5.)

18. Officer Sermons believed he established a rapport with Defendant because on several occasions prior to July 24, 2025, she had helped him get protestors off federal property and onto the sidewalk.  (4/14/26 Tr., Sermons, 194:10-195:4, 196:2-5.)     In these instances, Sermons had asked defendant for help and she complied.   (4/14/26 Tr., Sermons, 195:14-196:1.)  Defendant pulled protestors back across the line, off the apron and federal property so they would not get cited or arrested.  (4/14/26 Tr., Sermons, 217:5-25.)  During these

12

prior interactions, Officer Sermons had told defendant not to be on federal property past the property line. (4/14/26 Tr., Sermons, 195:5-13.) This evidence, taken together, establishes Defendant's actual awareness that being on federal property at the Roybal apron could subject her to detention, citation, and/or arrest.

19. Furthermore, in the moments just prior to her arrest, Defendant had been standing across from the Roybal apron on Alameda Street, a two-way thoroughfare, and ran across Alameda onto the apron when FPS officers began walking from inside the parking tunnel under Roybal towards one of the protestors who had come onto the apron and was writing in chalk on the apron concrete.

20. Defendant initially testified that she was unaware that there was a property line or where the property line was located. (4/15/26 Tr., Augustine, 73:23-74:5.) However, Defendant later acknowledged knowing about the federal property line. (4/15/26 Tr., Augustine, 82:2-7.) Defendant also admitted that when she ran across Alameda Street to join protestors on the evening of July 24, 2025, the protesters were behind the vehicle barricades, at least five feet onto federal property. (4/15/26 Tr., Augustine, 94:5-14.) When asked if she was on federal property, Defendant responded "yes." (4/15/26 Tr., Augustine, 94:15-16.)

21. Based on the evidence, including Defendant's own testimony, it is clear that Defendant was on federal property, knew she was on federal property when she crossed from Alameda onto the apron to assist another protestor on the evening of June 24, 2025, and did not comply with instructions from Federal police officers to step off of the Roybal apron during the protests on July 24, 2025. In so doing, Defendant acted knowingly, willfully, and unlawfully.

## CONCLUSION AND VERDICT

For the reasons discussed above, the Court finds that the Government proved beyond a reasonable doubt each of the elements necessary to establish that Defendant violated 41 C.F.R. § 102-74.385: Failing to Comply with Official Signs and Directions, a Class C misdemeanor. Accordingly, the Court finds Defendant is GUILTY of the offense as charged.

## SENTENCING

Pursuant to Federal Rule of Criminal Procedure 59(c)(3), the Court postpones sentencing in this matter. The parties may file any additional information relevant to sentencing within seven (7) days of the date of this Order.  After receiving the parties' sentencing positions, the Court sets a sentencing hearing for Tuesday, August 18, 2026 at 10:00 a.m. in Courtroom 580 of the Roybal Federal Courthouse.

## RIGHT OF APPEAL

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(b), Defendant may appeal the Court's judgment of conviction to a District Judge within fourteen (14) days of its entry.  To appeal, Defendant must file a notice with the Clerk of Court specifying the judgment being appealed and must serve a copy on an attorney for the government.

**IT IS SO ORDERED.**

DATED: August 7, 2026

_____
HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

14